NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 3, 2019[*]
Decided April 3, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-2888

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:17-cr-00063-1 |
| KORI BROADY, *Defendant-Appellant*. | Charles R. Norgle, *Judge*. |

**O R D E R**

Kori Broady created an Employer Identification Number with the IRS for the "Kuran Hadid-El Estate" and named his alias, Xavier De Indios, as the executor. Later, he established an Employer Identification Number for the "Kuran Hadid El Legacy Trust" and identified "De Indios" as the trustee. Broady mailed tax returns to the IRS in

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the name of the estate and the trust, claiming large tax refunds. Although he managed to obtain and deposit a check for $543,570, IRS special agents ultimately arrested him. Representing himself at trial, Broady argued that he had never acted with fraudulent intent because he believed the government owed him the money. A jury found Broady guilty of two counts of mail fraud under 18 U.S.C. § 1341, two counts of filing false claims with the IRS under 18 U.S.C. § 287, and one count of converting money belonging to the United States under 18 U.S.C. § 641. The district court denied his motion for a new trial. On appeal, he argues that he was deprived of a fair trial in numerous ways. We affirm.

Broady first argues that prosecutors unfairly made "presumptive allegations of false trusts, false estates and fake names"—essentially, he contends that the government made improper, unsubstantiated remarks that prejudiced him before the jury. Broady did not object to the remarks at trial, so under plain-error review he must demonstrate that prosecutors made "obviously or clearly improper" remarks that deprived him of a fair trial and that the trial's outcome probably would have been different but for the error. *See United States v. Durham*, 766 F.3d 672, 684 (7th Cir. 2014). But the prosecutors made no improper remarks, and ample evidence supported the fictitious nature of the trust and estate, Broady's use of aliases, and the falsity of the statements that Broady made on the tax returns. Consider the confiscated IRS check alone (which, as Broady himself points out, was in evidence). The check was issued to a non-existent, supposedly-deceased person ("Kuran Hadid El"). The check was confiscated during Broady's attempt to deposit it into this non-existent person's account. And Broady identified himself as "Xavier De Indios" to the IRS special agents who confiscated the check. Even by itself, this more than justified the government's numerous references to false statements, fictitious entities, and aliases. To the extent that Broady intended simply to argue that the evidence was insufficient to convict him, he does not come close to overcoming the "heavy burden" of overturning a jury verdict in light of the evidence in the record. *See United States v. Curescu*, 674 F.3d 735, 742 (7th Cir. 2012).

Broady also contends that the government "suppressed" exculpatory evidence he wished to use to "substantiate the executorship of the estate." Relatedly, he argues that the district court lacked "personal jurisdiction" over him because the allegedly fraudulent returns were filed by the trust and the estate, not by Broady individually. These arguments are frivolous. Broady was indicted for his role in obtaining, or attempting to obtain, tax refunds through fraud, and then converting the funds for his personal use. The criminal indictment against him and his presence in the country brought him squarely within the jurisdiction of the United States. 18 U.S.C. § 3231;

*United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011). That he created and used separate entities to effectuate the scheme is irrelevant.

Broady also argues that the district judge deprived him of a fair trial by exhibiting hostility toward him before the jury. To succeed, Broady must show that the perceived hostility conveyed a bias, and that bias in turn prejudiced the jury against him. *See United States v. El-Bey*, 873 F.3d 1015, 1020 (7th Cir. 2017). But Broady does not direct our attention to any specific conduct by the district judge in front of the jury, let alone any that rises to the highly "unusual" level at which the atmosphere of impartiality is destroyed. *United States v. Betts-Gaston*, 860 F.3d 525, 536 (7th Cir. 2017).

Broady next contends that the district judge unfairly prevented him from arguing that his religious beliefs provided a good-faith defense to the charges. The argument is confusing given Broady's pretrial motions in limine to bar the government from referring to his "religious affiliation," which were deemed unnecessary in light of the government's representation that it did not plan to touch on religion at all. But, given Broady's many attempts to get a "good faith" defense into the trial record, we will take him at his word that he sought to preclude evidence only of his affiliation with a particular religious *group*—the Moorish Science Temple—while still arguing that his beliefs, not fraudulent intent, drove his pursuit of tax refunds. It does not matter; Broady was not entitled to argue good faith to the jury, or to obtain a jury instruction about good faith, because he did not submit any evidence at trial about his beliefs. *See United States v. Fadden*, 874 F.3d 979, 982 (7th Cir. 2017); *United States v. Kokenis*, 662 F.3d 919, 929 (7th Cir. 2011). Broady unsuccessfully attempted to question an IRS agent about statements Broady made about "a bond initiated at his birth," but he did not testify about his state of mind, and he did not point to any circumstantial evidence of his beliefs. The district judge had no obligation to entertain a good-faith defense lacking any evidentiary basis.

Broady's remaining arguments are also frivolous. He argues that the district court should have granted him a new trial because he obtained new evidence—two letters he received from the IRS in response to his (false) report that a refund check had been lost or stolen, that he admits to having in his possession during trial—showing that an IRS witness gave false testimony. But to support the argument he merely incorporates his new-trial motion by reference, which is not permitted. *See Norfleet v. Walker*, 684 F.3d 688, 691 (7th Cir. 2012). In any event, the government aptly points out that Broady was not prejudiced by the absence of evidence of *additional* false statements he had made to the IRS. Broady also contends the government selectively prosecuted

him based on his religious affiliation, but he provided no evidence of this, let alone the "clear evidence" necessary to "displac[e] the presumption that the prosecution acted lawfully." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999). Finally, Broady provides no support for his contention that Judge Norgle should have recused himself under 28 U.S.C. § 144 after supposedly exhibiting bias at the first status hearing he held after taking over the case. The hearing consisted of rulings and case administration matters, which are not fodder for claims of bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). Nor are expressions of impatience or annoyance. *See id*.

We have considered Broady's other arguments, and none has merit.

AFFIRMED