> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 20, 2018[*]
Decided October 1, 2018

*Before*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 17-2486

| | |
|---|---|
| LINDA SCULLY, et al., <br>     *Plaintiffs-Appellants*, <br><br> *v.* <br><br> NATHAN GOLDENSON, et al. <br>     *Defendants-Appellees*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 17 C 1325 <br><br> Charles P. Kocoras, <br> *Judge*. |

**O R D E R**

In this suit, three siblings, Linda, Mark, and Harold Scully, claim that a multitude of defendants conspired to make a "nightmare" of their lives and their mother's after their mother was discovered wandering the street one day. The defendants allegedly imposed and then abused a guardianship over their mother, Mary Jane Teichert,

---

[*] The defendants were not served with process in the district court and are not participating in this appeal. We have agreed to decide this case without oral argument because the brief and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. CIV. P. 34(a)(2)(C).

leading to poor medical care for her and a slew of offenses against the siblings, including false arrests, wrongful eviction, and theft. The district court dismissed the complaint at screening, *see* 28 U.S.C. § 1915(e)(2)(B); *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999), after giving the Scullys a chance to shore up their complaint. The Scullys appeal, and we affirm the judgment.

The Scullys alleged in their original complaint that 28 defendants all conspired to violate their constitutional rights and committed numerous state-law torts. Though the district judge summarized the Scully's basic allegations, he found the complaint far from "short and plain" and could not discern a plausible theory of legal relief against any defendant, and so he dismissed it. *See* FED. R. CIV. P. 8(a)(2), 12(b)(6). The judge also denied the Scullys' motions for recruitment of counsel and to proceed in forma pauperis because they did not provide complete information.

The Scullys filed their amended complaint and basically repeated the same allegations. The district judge dismissed the amended complaint, again reasoning that the Scullys had not provided a "short and plain" statement of their claim or stated a plausible claim for relief. *See* FED R. CIV. P. 8(a)(2), 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The judge also denied the Scullys' renewed motions to proceed in forma pauperis and for recruited counsel as "moot." The Scullys then asked the district court for relief from the judgment under Federal Rule of Civil Procedure 60 and at the same time filed a proposed second amended complaint. The district judge construed those filings as a motion for leave to amend the complaint, *see* FED R. CIV. P. 15(a)(2), but he concluded that the proposed pleading suffered from the same defects as its predecessors, so he denied the motion.

We review de novo a dismissal under 28 U.S.C. § 1915(e)(2), and we accept the facts alleged in the Scullys' complaint as true. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 820 (7th Cir. 2009).

For the sake of brevity, we do not repeat the district judge's summary of the Scullys' factual narrative, which they say the judge "fully understood." As far as we can tell, the Scullys' potential legal claims can be grouped into five broad categories: (1) those dealing with alleged improprieties by the Office of the Public Guardian as it exercised plenary control over Mary's affairs through the state-court guardianship and, later, eviction and probate proceedings; (2) those relating to poor medical care the Scullys' mother received at two hospitals and two care facilities; (3) those pertaining to eight false arrests that Linda endured when she tried to oust "squatters" from her

mother's apartment building, where Mark and Linda both lived; (4) those dealing with the guardian's efforts to damage and then take possession of Mary's apartment building and her and the siblings' expensive personal property; and (5) those pertaining to their denial of access to their mother, and the insults and rude comments that they supposedly endured when they managed to visit her. The defendants include the "squatters," the hospitals and care facilities that treated Mary, lawyers and others representing the Office of the Public Guardian, the engineering firm that turned off the heat and water in the apartment building, and the movers who carted away their belongings. The Scullys allege that they all conspired with one another to perpetrate these "traumatic" acts.

The Scullys insist that their amended complaint passes muster, especially because the district judge was able to summarize their allegations and therefore, they say, understood their claims perfectly well. There is a difference, however, between capturing the basic story and discerning any plausible basis for relief. The amended complaint suffers from numerous problems. Most importantly, federal courts lack subject-matter jurisdiction over the case to the extent that the Scullys' due-process or equal-protection claims conflict with judgments of the state courts on matters of the guardianship, probate, and eviction proceedings, all of which the siblings allege have been corrupt and unconstitutional.[1]  The *Rooker-Feldman* doctrine, and in some instances, the probate exception bar those claims. Specifically, the *Rooker-Feldman* doctrine bars the Scullys' requests for this court to overturn the state court's rulings during the guardianship and eviction matters, and the probate exception bars this court from interfering with the state court's disposition of their mother's estate. *See Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 859 (7th Cir. 2007). Further, the Scullys cannot bring claims against the caretakers and medical facilities that allegedly abused their mother. The Scullys affirmatively state that none of them served as their mother's guardian and they do not

---

[1]  In their brief, the Scullys say that the facts alleged in the amended complaint mirror those from "the probate blogs, facebook, and other reliable sources of information" about abusive guardianships such as those in Pennsylvania's so-called "Kids for Cash" scandal. They also invoke the criminal indictment of April Parks, a private guardian implicated in far-ranging guardianship abuses in Nevada. They do not link the cases described on the websites and in government reports with their own allegations, other than to say that these other cases lend plausibility to their story.

allege to be executors of Mary's estate. As such, they are not the real parties in interest. *See* FED R. CIV. P. 17(a)(1); *Struck*, 508 F.3d at 859.

Reading the amended complaint generously, the Scullys claim that many defendants, individually or as part of a conspiracy, violated Linda's civil rights by lodging fabricated criminal complaints against her for assault and battery, resulting in eight false arrests. (She never was convicted.) The Scullys further allege that the "squatters" and five representatives of the Office of the Public Guardian conspired to cause these arrests as part of the larger scheme among all the defendants. But these allegations of a vast conspiracy among all the defendants, with a hint of paranoia to them, do not strike us as sufficiently plausible to state a claim. *See* FED. R. CIV. P. 12(b)(6); *Lennon v. City of Carmel*, 865 F.3d 503, 508–09 (7th Cir. 2017); *Wilson v. Price*, 624 F.3d 389, 391–92, 394–95 (7th Cir. 2010). Indeed, the amended complaint also offers nothing about any agreement among the defendants.

Moreover, the absence of any underlying constitutional claim forecloses the conspiracy claim. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). And there is no plausible constitutional claim here. The Scullys lump all eight arrests together without elaborating on the circumstances or the parties involved. The generalized allegations do not give the defendants notice of the conduct at issue. *See Iqbal*, 556 U.S. at 678–79 (2009); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The amended complaint also contains many possible state-law tort claims, such as defamation, theft,[2] and intentional and negligent infliction of emotional distress. Ordinarily a district court would relinquish supplemental jurisdiction over state-law claims when the claims triggering federal jurisdiction fall away. *See* 28 U.S.C. § 1367(a), (c)(3); *Howlett v. Hack*, 794 F.3d 721, 728–29 (7th Cir. 2015). The district court did not expressly do so here, but dismissal of the entire complaint was appropriate. For maximum clarity we will amend the judgment to clarify that the dismissal of the state-law claims is without prejudice. *See Howlett*, 794 F.3d at 728–29. We will do the same with respect to constitutional claims that are jurisdictionally barred by the *Rooker-Feldman* doctrine or the probate exception.

The Scullys also insist that the district judge should have accepted their proposed second amended complaint. But in that proposed pleading the Scullys continued to

---

[2] The Scullys, who say they are all impoverished, allege that Mary's apartment and theirs contained fine oil paintings, china, silver, and Persian rugs.

baldly allege a wide-ranging conspiracy against multiple unrelated defendants for purported wrongs that do not appear to be connected. There is no abuse of discretion where the district court denies a motion for leave to amend when the proposed amendment would not cure the deficiencies identified in the earlier complaint. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015). That was the case here. Though the Scullys emphasize that the district court discerned the basic factual grounds for their claims, that does not establish that their claims were plausible. *See Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A complaint is for pleading "claims," not "facts"; it must enumerate grievances with enough clarity to reveal at least a hypothetical basis for liability. *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). It would have been error for the court to tell the Scullys to plead more facts, such as those corresponding to the elements of a legal claim. *See id*. Instead, the judge appropriately focused on the clarity of the complaint and plausibility of the claims.

Relatedly, the Scullys contend that the district court should have given them a specific list of deficiencies with their complaints before dismissing the case. But the district judge pointed the Scullys to the relevant problems with their pleadings and cited the appropriate legal authority. The judge is not the plaintiffs' advocate; the burden is on the litigants to cure defects in a complaint. *See Pension Tr. Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 942 (7th Cir. 2018).

Finally, the district court properly denied the Scullys' motions for recruited counsel because they did not provide the required information about efforts to obtain counsel on their own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). They tell us now that no lawyer dares to challenge the corrupt guardianship system, but there is no record in the district court of their contact with any attorneys. The judge also properly denied the Scullys' incomplete motions to proceed in forma pauperis. The Scullys' failure to provide the required information justified denial. *See* 28 U.S.C. § 1915(a); *Hrobowski v. Commonwealth Edison Co.*, 203 F.3d 445, 446 (7th Cir. 2000).

As noted, we modify the judgment to reflect that the jurisdictional dismissal of the federal due-process and equal-protection claims barred by the *Rooker-Feldman* doctrine or probate exception is without prejudice, as is the dismissal of the state-law claims. As so modified, the judgment is AFFIRMED.